DunkiN, Ch.,
delivered the opinion of the Court.
Both the Chancellors who heard these causes, at the circuit having concurred in the opinion that there was no fraud in fact in the deed of March, 1832, it would require a strong case of misapprehension on their part, to induce this Court to revise the decree on the first ground assumed by the appellants. But so far from this, although the ground was taken, no commentary on the evidence was offered, and no argument urged on which it was to be sustained.
The parties had formerly resided in Orangeburg district, in South Carolina, and removed to Georgia. Before leaving this Slate, Footman had been embarrassed, but it was proved by Col. *37 Glover of Orangeburg, that Footman afterward received a legacy from Mr. Caldwell, a relative, and that the witness, as his agent, discharged every debt which he knew to exist against him. There was no proof that any debt remained unpaid. Mr. Robert Habersham, of Savannah, was the factor of Footman while in Georgia. He proved that in March, 1832, he owed no debts except one or two, for the discharge of which, funds were placed in the hands of witness,, and the debts paid. This is the substance of his testimony, although his examination was not put in possession of the Court. Superadded to this, is the express provision of the deed, that the exemption of the property is only from “ such debts, or contracts, as may hereafter be incurred, or entered into, by the said William C. Footman.” The deed was recorded in the proper office of the county in which the parties resided in the month after its execution, to wit, on the 11th April, 1832. In the decree last pronounced, it is said to be “ very doubtful whether, at the time of making the deed, Footman had any purpose of removing to South Carolina. The evidence does not seem to warrant that inference.” If this is a misapprehension, it could be demonstrated by the adduction of the evidence. The deed was executed on the 5th March, 1832. Footman did not remove to South Carolina till the Fall of that year, and the negroes remained until the following year. But after his return to South Carolina, the deed, which had been recorded in Georgia, was carried to the clerk of the Court in Williamsburg, (to which district they had removed,) for the purpose of being placed on record. But Mr. Ferrell, the clerk, testified, that he told the person who brought it, that, although the deed was properly drawn, the probate was not such as would authorize him to record it. But it was abundantly proved, and particularly by the defendant’s witnesses, that from the time of Footman’s return to this State, no credit would be given to him unless his wife joined in the contract. In the language of the witnesses, she was regarded as a sole trader. Under these circumstances, some four years after Footman’s return to this State, to wit, in February, 1837, the defendant made the loan. Peter *38 M. Oliver, the friend and brother-in-law, both of Footman and the defendant, and who had carried the deed to the clerk’s office for record, advised the defendant to make the loan, but told him to have the signature of Mrs. Footman. Oliver was a man of unimpeachable integrity. The defendant took the bond of Mr.' and Mrs. Footman, and, to secure the payment, they executed to him a mortgage of a tract of land, and also of a portion of the slaves included in the deed of March, 1832. It is intimated in the decree of the Circuit Court, that all the parties probably acted under a misapprehension of the extent of Mrs. Footman’s power over her separate estate. Wiser men than the defendant, and better lawyers than Footman, have fallen into similar errors. Pendergrass says he did not know of the existence of this deed, and his assertion is entitled to full credit. But is it not demonstrated that before he made the loan, he was distinctly advised that, in order to render the mortgage of the slaves valid, Mrs. Footman must join in the execution of the instrument. If Footman alone was the owner of the slaves, why take the joint bond and joint mortgage? Did not this clearly indicate that Mrs. Footman had an interest in the premises, and put him on the inquiry as to the extent of her authority ?
But the second ground assumes the position, and it is on this that the counsel chiefly relies, that although the deed of March, 1832, was bona fide, and that the party was not in debt at the time, yet, being voluntary, it is void against subsequent creditors and purchasers.
I think the proposition is properly put. For although many of the English cases cited are on the Statute 27 Eliz., yet it is conceded that this statute embraces only conveyances of real estate. But the current of our own decisions seems to be, that the statutes, both of 13 and 27 Eliz., were only in affirmance of the common law. I am not aware that by the common law any distinction existed between the rights of creditors and those of purchasers. Conveyances, which were fraudulent and covinous, were void as to both. But one of the leading cases, adduced in support of the appeal, was Cathcart vs. Robinson, (5 Peters, *39 264.) This turned on the construction to he given to the Statute 27 Eliz ; Chief Justice Marshall says, the recent English decisions upon this statute “ go beyond the construction which prevailed at the American revolution, and ought not to be followed.” He further says that “the principle which, according to the uniform course of this Court, must be adopted in construing the Statute 27 Eliz. is, that a subsequent sale without notice, by a person who had made a settlement not on valuable consideration, was presumptive evidence of fraud, which threw on those claiming under such settlement, the burthen of proving that it was made bona fide.” None of our own decisions go beyond this. To say that a second sale for valuable consideration, by a man who had previously made a voluntary settlement of the same property, is, per se, conclusive evidence of fraud in the settlement, seems not sanctioned by reason. A second sale for valuable consideration, by a man who has already sold the same estate to another purchaser, is conclusive evidence of fraud, but surely not in the former sale, but in the second; and so, if a father in affluent circumstances makes a deed of gift of two slaves to his son, and five years afterwards sells the same slaves for valuable consideration, how can it be affirmed with reason that this is conclusive evidence of fraud in the previous gift ? It indicated caprice and injustice to his child, and fraud in the sale to the bona fide purchaser, but is any thing else than conclusive, that the gift five years previously, was concocted in fraud. Hudnal vs. Wilder, (4 McC. 294,) was determined on the ground of fraud in fact in the previous voluntary settlement, as affirmed by two concurring verdicts. It was, therefore, unnecessary to give a construction to the Statute 27 Eliz., even if it had applied to personalty. Judge Nott, however, offers some observations on the reason of the law for considering fraudulent voluntary transfers by a grantor, who still continues in possession. “ Possession,” says he, “ is the highest evidence recognized by law, of a right to personal property. A vender continuing in possession, is regarded, as to creditors or subsequent purchasers, as the owner, against the most solemn unconditional deed to a bona *40 fide purchaser not in possession.” He afterwards says, “ if such gifts or conveyances are to prevail against creditors and bona fide purchasers, it is impossible to foresee to what extent frauds may not be carried.” It •'will be-perceived that creditors and subsequent purchasers are placed- by him in the same category, and their rights on the same'footing. But the Judge admits, as has been repeatedly adjudicated, that, where the object of the deed was to make provision for the wife and children who were living with the donor, his possession was consistent with the terms of the deed, and, therefore, repelled the presumption of fraud arising from the variance between the terms of the deed and the possession. But if the deed were, per se, fraudulent, as to creditors and purchasers, because voluntary, how could this explanation make any difference ? The common law, as has been said, recognizes no distinction between the rights of creditors and subsequent purchasers in reference to voluntary deeds. I am unable to find any decision of our own Courts, in which a deed has been declared void in favor of a subsequent purchaser, which would not also have been .declared void in favor of a creditor. Both stand on the character of the voluntary settlement. The inquiry always is bona fide or mala fide. The decisions point out various badges of fraud, such as, in some cases, the continued possession of the donor, his existing indebtedness, &c. &c.; and the execution of a second deed, for valuable consideration, of the same property, may well warrant a jury in referring back the fraudulent purpose to the time of the execution of the previous voluntary settlement. But it is no where said that this is a legal inference, or a presumption not to be repelled by proof to the contrary. If it could be shewn that the donor had abundant means, not only at the time of the gift, but at the time of the subsequent sale, and that he was entirely able to indemnify the purchaser on his warranty, would not this evidence satisfactorily repel any presumption of fraud in the original gift, and shew, that if any fraud existed, it was in the second sale, and in that alone? Is there any adjudication of our Courts, which would warrant the purchaser in insisting on *41 the voluntary character of the settlement, as conclusive evidence of fraud, and in retaining the property against the donee, although abundantly protected by his warranty 1 If not, then the execution of the second deed is only one of the circumstances from which fraud in the former deed may be inferred; and this is in perfect harmony with Cathcart vs. Robinson. The judgment of the Supreme Court of the United States in that case carries the doctrine quite as far as it has been hitherto recognized in this State, and that only throws, on those claiming under the voluntary settlement, the onus of shewing that it was made bona fide.
But there can be no doubt that, according to the American decisions, a purchaser, with notice, cannot avail himself of the Statute 27 Eliz., and it is equally well settled, that such notice as would put the party on the enquiry, as would enable him with ordinary diligence to ascertain the fact, is deemed sufficient, (1 McC. 231.) The defendant was about to lend his money to a man who, according to the distinct testimony of his own witnesses, for the last four or five years, had no credit unless his wife joined in the contract. He was cautioned that he must have her signature in this particular transaction. But Mrs. Footman, being a married woman, could have no authority to do any act but as derived from some deed, or will. The fact of requiring her signature to the mortgage, and the fact of her joining in the execution, while it shewed that Fpotman was not understood to possess the absolute dominion over the property, pointed also to the existence of some authority under which his wife acted. This was the inquiry which the defendant was bound as a prudent man to pursue. Oliver, who had given him the caution, had himself carried the deed to the clerk’s office for record. He would certainly have told him of the existence of the deed, (as was, in fact, implied by his caution to him,) although it is most probable he would at the same time have assured him, that Mrs. Footman was authorized by the deed to execute the mortgage. The Circuit Chancellor intimates the opinion, that such seems to have been the view of all the parties to the transaction. *42 But this can have no effect on the construction which the Court must give to the deed, or upon the rights of the parties claiming under that deed.
This Court perceives no error in the decrees which are the subject of this appeal. It is ordered and decreed that the same he affirmed, and the appeals dismissed.
Johnston, Ch., concurred.